IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Austin Ryan Moore,<br><br>    Plaintiff,<br><br>v.<br><br>Nicholas DeRitis,<br>Emerson L. Gross,<br><br>    Defendants. | Case No. 4:23-cv-6274-SAL<br><br><br>**ORDER** |

  Plaintiff Austin Ryan Moore ("Plaintiff"), acting *pro se*, brings this action against Defendants Officer Nicholas DeRitis ("DeRitis") and Officer Emerson L. Gross (collectively, "Defendants") of the North Myrtle Beach Police Department. Plaintiff alleges Defendants violated his constitutional rights by using excessive force during an arrest. [ECF No. 1.] Defendants move for summary judgment, *see* ECF Nos. 46 & 51, and Plaintiff opposes the motion, *see* ECF Nos. 55 & 60.

  This matter is before the court on the Report and Recommendation ("Report") issued by United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending Defendants' motion be granted. [ECF No. 62.] Plaintiff objects to the recommendation.[1] [ECF No. 72.] For the reasons below, the court adopts the Report as well as the ultimate recommendation.

---

[1] The Report was originally mailed to Plaintiff on February 6, 2025, and objections were due by February 20, 2025. [ECF Nos. 62 & 63.] On February 28, 2025, the court received a motion from Plaintiff requesting an extension of his deadline to file objections and further requesting another copy of the Report. [ECF No. 69.] The court granted the extension and sent another copy of the Report on March 3, 2025. [ECF Nos. 70 & 71.] But that same day Plaintiff mailed objections to the Report, which the court received on March 5, 2025. *See* ECF No. 72-2. The court subsequently received a notice of change of address from Plaintiff, and the order granting Plaintiff's extension

**LEGAL STANDARDS**

I.  **Review of a Magistrate Judge's Report**

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009) (emphasis in original).

---

and the additional copy of the Report were returned to this court as undeliverable, so the court mailed those to Plaintiff at his new address on April 3, 2025. *See* ECF Nos. 77 & 78. The court notes Plaintiff had a copy of the Report at the time he wrote his objections, and he cites the Report within those objections. Nevertheless, since remailing Plaintiff a copy of the Report, the court has waited an additional 61 days to allow Plaintiff to submit further materials. No additional filings have been received. The court now enters this order ruling on Plaintiff's objections and the Report.

## II.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Courts must liberally construe complaints filed by *pro se* plaintiffs. *Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2005). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Still, the "special judicial solitude" applicable to *pro se* complaints "does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (1990). Accordingly, the court may not ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *id.*, nor can the court presume a

3

genuine issue of material fact where none exists. If none can be shown, summary judgment should be granted. Fed. R. Civ. P. 56(c).

## DISCUSSION

### I.     The Report

Plaintiff alleges Defendants used excessive force during his arrest. Defendants move for summary judgment, arguing Plaintiff was not subjected to excessive force and any force used was reasonable under the circumstances. The magistrate judge issued a thorough Report and Recommendation, recommending Defendants' motion be granted. [ECF No. 62.] The Report sets forth in detail the relevant facts and standards of law, and the court incorporates those facts and standards with only a brief synopsis of the relevant facts.[2] *See id.*

#### A.     Factual Background

On September 25, 2023, Plaintiff was arrested in North Myrtle Beach, South Carolina, for suspected automobile theft. *Id.* at 4. When initially approached by law enforcement officers, Plaintiff fled. *Id.* at 4–5. Officers, including DeRitis, pursued him on foot, and DeRitis repeatedly commanded Plaintiff to "freeze." *Id.* at 5. Plaintiff stumbled, fell, got back up, and continued running. *Id.* The chase ended with DeRitis pushing Plaintiff to the ground from behind.[3] *Id.*

---

[2] While Plaintiff generally does not object to the factual background or legal standards in the Report, he does take issue with certain inferences drawn from the facts. *See* ECF No. 72. The court addresses Plaintiff's specific factual objections below.

[3] A gun was recovered a few feet away from where Plaintiff was pushed to the ground. The Report states: "DeRitis searched the area where Plaintiff fell for any items Plaintiff may have dropped. Approximately three feet from where Plaintiff was laying, DeRitis located a loaded handgun laying on the ground." [ECF No. 62 at 9–10.] Plaintiff argues the Report should have described the location where Plaintiff "fell" as the area where he was "pushed down." *See* ECF No. 72 at 5. To the extent that Plaintiff seeks to clarify that the gun was found at the site of his arrest, rather than where he initially stumbled while fleeing, the video confirms the gun was found where DeRitis

Plaintiff maintains that because it was dark outside, and because DeRitis failed to identify himself as a police officer, Plaintiff was unaware that the men pursuing him were law enforcement until the moment that he was being handcuffed. *Id.* After DeRitis placed Plaintiff in handcuffs with the assistance of two other officers, Plaintiff was helped to his feet and read his *Miranda* rights. *Id.* at 6. No other force was used. *Id.*

While being transported, Plaintiff informed the officer in the patrol vehicle that he "might have dislocated [his] knee." *Id.* at 10. The officer responded that he would have medical personnel examine Plaintiff upon arrival at the jail. *Id.*

Once inside the jail, an officer asked Plaintiff if he needed medical attention. *Id.* He responded that he did, and medical was called. *Id.* Plaintiff then told the officer that he did not notice a problem with his knee until "about two minutes after they put [him] in the car." *Id.* Plaintiff was transported to the hospital, where X-rays revealed he had broken his kneecap. *Id.* at 7.

B.  **Excessive Force**

"The Fourth Amendment's right to be free from unreasonable seizures includes the right to be free from seizures carried out with excessive force." *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005). Accordingly, a claim that police officers used excessive force when making an arrest is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

In *Graham*, the Supreme Court identified three balancing factors for courts to consider in determining whether an officer's use of force was reasonable. *Id.* at 396. The *Graham* factors are as follows: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat

---

pushed Plaintiff to the ground. The Report does not misstate the facts, but insofar as Plaintiff seeks to clarify where the gun was found, the court accepts that clarification.

to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* In the Report, the magistrate judge concluded that each of the *Graham* factors weighed in Defendants' favor. *See* ECF No. 62 at 12, 14–16.

### C.    Qualified Immunity

The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts must ask two questions in determining whether officers are entitled to qualified immunity: (1) "whether a constitutional violation occurred"; and (2) "whether the right violated was clearly established." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)). The magistrate judge concluded that Defendants are entitled to qualified immunity under the first prong of the analysis because, based on the totality of the circumstances, Defendants did not violate Plaintiff's Fourth Amendment rights. [ECF No. 62 at 16.]

### D.    Medical Indifference

The magistrate judge found Plaintiff failed to show that Defendants' actions or inactions were objectively unreasonable under the standard applied to medical indifference claims by pretrial detainees. *See* ECF No. 62 at 16–18 (citing *Short v. Hartman*, 87 F.4th 593, 607 (4th Cir. 2023)). As explained in the Report, Plaintiff failed to show (1) that Defendants knew or should have known of his knee injury at the time of his arrest or (2) that Defendants intentionally,

knowingly, or recklessly acted or failed to act to appropriately address the risk that the injury posed.[4] *Id.* at 18.

    **E.**    **Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against a non-consenting state, its agencies, and its officers acting in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Thus, a plaintiff asserting a claim under 28 U.S.C. § 1983 may not recover monetary damages from officers named in their official capacities. *See Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer*, 88 F.3d at 1332 (4th Cir. 1996)). That said, the Eleventh Amendment does not bar suits for money damages against state officials sued in their *individual* capacities. *E.g.*, *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). Consistent with these principles, the magistrate judge recommended that summary judgment be granted to the extent that Plaintiff sues Defendants for money damages in their official capacities.

**II.**    **Plaintiff's Objections**

Plaintiff objects to several of the Report's conclusions. The court addresses each objection below.

    **A.**    **Objections Regarding the *Graham* Factors**

The purpose of the inquiry under *Graham* is to determine whether an officer's use of force was objectively reasonable. *See E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). "Determining the reasonableness of an officer's actions 'requires a careful balancing of the

---

[4] Plaintiff questions why he was "forced to walk with a known injury" and why he was made to complete the booking process while in pain. *See* ECF No. 72 at 5. But Plaintiff does not raise any specific objections to the Report's treatment of his medical indifference claim, nor does he show that Defendants knew or should have known of his knee injury or that they intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed. *See Short*, 87 F.4th at 607. The court agrees with the analysis of the magistrate judge and therefore fully adopts this section of the Report without further discussion.

nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). Thus, a court applying the *Graham* factors asks whether the officers' use of force was reasonable considering "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

The court stresses that the *Graham* factors are not exclusive. *E.W. by & through T.W.*, 844 F.3d at 179 ("[Courts] may identify other 'objective circumstances potentially relevant to a determination of excessive force.'") (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). And application of the *Graham* factors is not a rigid test; it is a balancing analysis. So, for example, if the crime at issue is not particularly severe, that does not necessarily mean the first factor favors the plaintiff if the force officers used was proportionate to the severity (or non-severity) of the crime. With these principles in mind, the court turns to Plaintiff's objections to the *Graham* factors.

### 1. The Severity of the Crime at Issue

Plaintiff argues the first *Graham* factor weighs in his favor because he was only wanted for nonviolent crimes. *See* ECF No. 72 at 6–7. There were multiple active warrants for Plaintiff's arrest, and he admits he was wanted for possession of a stolen vehicle and for breaking and entering automobiles. *Id.* While these crimes are indeed nonviolent—they are not minor offenses. *See* S.C. Code Ann. § 16-21-80 (2010) (Possession of a stolen vehicle is a felony in South Carolina when the vehicle is worth more than $2,000.).[5] The force used by Defendants, however, was minimal.

---

[5] Plaintiff was charged with possession of a stolen vehicle, "value $10,000 or more." *See* HORRY COUNTY PUBLIC INDEX, https://publicindex.sccourts.org/Horry/PublicIndex/ (search Case # field for "2023A2620700679").

As the Supreme Court recognized, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" and rises to the level of excessive force. *Graham*, 490 U.S. at 396 (quotations omitted). Here, despite Plaintiff's resulting injury, Defendants' use of force in pushing Plaintiff to the ground as he fled was commensurate with the government's interest in apprehending a suspected car thief. Accordingly, the court overrules Plaintiff's objection and finds that the first *Graham* factor favors Defendants.

### 2. Threat to the Safety of Officers and Others

Plaintiff urges that he did not pose an immediate threat to officers or others. [ECF No. 72 at 7.] Plaintiff argues *he* "was in fear of harm and felt threatened which is why [he] ran away." *Id.* However, the relevant inquiry is whether Defendants could have reasonably believed Plaintiff posed a threat under the totality of the circumstances. *See, e.g.*, *Moody v. City of Newport News, Va.*, 193 F. Supp. 3d 530, 548–49 (E.D. Va. 2016).

Defendants knew Plaintiff was wanted for automobile theft, had active outstanding warrants, was fleeing from police, and refused to obey commands. In that context, Defendants used a reasonable amount of force to gain control over the situation to ensure order and safety. *See Melgar*, 593 F.3d at 355 ("Police are often forced to make split-second decisions, a factor which bears upon the reasonableness of their responses."); *Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). Plaintiff's objection is therefore overruled, as the court agrees with the magistrate judge that the second *Graham* factor weighs in Defendants' favor.

### 3. Resisting Arrest

The magistrate judge found, and the video evidence confirms, that Plaintiff fled on foot when DeRitis approached him in uniform and told him to "freeze." [ECF No. 62 at 14.] Plaintiff was given several commands to stop but failed to obey the commands and continued to run. *Id.* Plaintiff claims DeRitis "never announced himself" and "silently ambushed" Plaintiff in "the darkest part of the complex." [ECF No. 72 at 7.] Because it was dark outside, Plaintiff maintains he was unable to see Defendants' clothing or "any other sights" that would indicate Defendants were police officers. *Id.* at 3. In sum, Plaintiff argues he never resisted arrest because he was unaware he was being arrested. *Id.*

The Report accurately notes that "there were street lights in the parking lot and porch lights on at some of the apartments in the area where DeRitis first approached Plaintiff and where Plaintiff began to flee," but "[t]he area where DeRitis pushed Plaintiff down was not fully illuminated." [ECF No. 62 at 8.] The Report also explains that, while DeRitis never announced he was police (at least in the audible portion of the video evidence), "Officer St. Clair announced they were police while in pursuit of Plaintiff." *Id.* Plaintiff counters that the video "clearly shows that Officer St. Clair yelled police literally at the same second plaintiff was being pushed down." [ECF No. 62 at 8.] The court agrees that Officer St. Clair did not yell "police" until the moment before Plaintiff was apprehended. But the conclusion of the magistrate judge is sound all the same.

The video evidence shows that it was not so dark that Plaintiff would have been unable to recognize Defendants as police officers—especially in the area where he was first approached by DeRitis. Furthermore, whether Plaintiff knew he was being arrested is irrelevant. Again, the purpose of *Graham's* balancing test is to determine whether an officer's use of force was objectively reasonable under the circumstances. *See E.W. by & through T.W.*, 884 F.3d at 179. The

10

question is whether Plaintiff's "sequence of behavior supported a reasonable belief that he was resisting arrest" on the part of Defendants. *See Osborn v. Crews*, No. 7:16CV00389, 2018 WL 11462839, at *7 (W.D. Va. Mar. 8, 2018).

Finally, as noted in the Report, "[t]here is no established rule, nor should there be a requirement, that the police must announce their presence *prior* to making an arrest in public." [ECF No. 62 at 14 n.4 (quoting *Austin v. Town of Blacksburg*, 66 F. Supp. 2d 771, 776 (W.D. Va. 1998), *aff'd sub nom*, *Taylor ex rel. Austin v. Town of Blacksburg*, 188 F.3d 503 (4th Cir. 1999)).] Plaintiff argues the arrest did not happen in public, but "on plaintiff's property where his address is on record in DMV." [ECF No. 72 at 8.] Plaintiff then cites *Bonner v. Anderson*, 81 F.3d 472, 474–75 (4th Cir. 1996) for the proposition that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." *Id.*

Plaintiff's argument fails for two reasons. First, the arrest did happen in public. The fact that Plaintiff lived at the apartment complex and that his address was on record with the DMV did not render the parking lot his private property. Second, the language from *Bonner* refers to the "knock-and-announce" rule, which applies only where officers forcibly enter a residence. *See id.* at 475 ("The rule is designed to satisfy three purposes: (1) protecting the safety of occupants of a dwelling and the police by reducing violence; (2) preventing the destruction of property; and (3) protecting the privacy of occupants."); *see also*, *e.g.*, *United States v. Williams*, 130 F.4th 177, 184 (4th Cir. 2025).

For the reasons above, the third *Graham* factor favors Defendants, and Plaintiff's objection is overruled.

**B.     Objection to Qualified Immunity**

Plaintiff argues summary judgment is inappropriate because officers should have knocked on his door rather than pursue him. "If officers would have knocked on [the] door," Plaintiff explains, "none of the physical force would have been used." *See* ECF No. 72 at 8–9. The relevant inquiry is not whether a different tactic might have been preferable but whether the tactic used violated clearly established law. Plaintiff has not raised a genuine dispute of material fact that would impact the qualified immunity analysis. His objection is overruled.

**C.     Objection to Eleventh Amendment Immunity**

Plaintiff correctly notes that "Eleventh Amendment immunity does not apply to suits for money damages against state and city officials sued in their individual capacities." *See* ECF No. 72 at 10 (citing *Hafer*, 502 U.S. at 30–31; *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). He then points out that his complaint "clearly shows that plaintiff is suing the defendants in both their [official *and*] individual capacities." *Id.* In his discussion of Eleventh Amendment immunity, the magistrate judge recommended that Defendants' motion for summary judgment be granted as to claims for monetary damages brought against them in their official capacities. [ECF No. 62 at 20.] The court agrees.

As for Plaintiff's claims against Defendants in their individual capacities, those claims are not barred by the Eleventh Amendment. But as discussed above, Plaintiff is not entitled to relief on those claims, as Defendants neither violated his Fourth Amendment rights nor acted outside the scope of qualified immunity.

## CONCLUSION

As outlined above, each of Plaintiff's objections are overruled, and the court adopts the Report and Recommendation of the magistrate judge. Defendants' motion for summary judgment, ECF No. 46, is therefore **GRANTED**.

**IT IS SO ORDERED.**

June 3, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge